## G. H. Maxson v. T. R. Jennings.

Decided December 9, 1898.

**1. Statement of Facts Corrected at Subsequent Term.**

The trial judge may at the next term of court after judgment correct the record by striking a bill of exceptions from a statement of facts, on the ground that it was not presented to him within ten days after the conclusion of the trial and was by him inadvertently allowed to remain in the statement in approving it.

**2. Trespass to Try Title—Equitable Title Sufficient.**

As against a trespasser one who has a beneficial title by virtue of a bond for conveyance and payment of the purchase money may maintain trespass to try title.

**3. Community Property—Deed to Wife—Presumption—Recitals.**

A recital in a deed of land to the wife, that the consideration is paid by her with the previous consent of her husband, and one in a deed of the same land by her, that she is acting with the consent and authority of the husband and in consideration of a sum paid to her, the husband joining in the deed, are not sufficient to overcome the presumption that the land was community property.

**4. Heirship—Power of Attorney—Presumption from Lapse of Time.**

Although a deed reciting that a certain person is an heir, and possesses power from the other heirs to convey title to land, would not ordinarily be evidence of heirship against anyone except parties thereto, yet lapse of time, coupled with acts of ownership on one side and non-assertion of any opposing claim on the other, authorizes the court to presume and find, not only the fact of heirship recited, but competent power in the grantor from the other heirs.

**5. Trespass to Try Title—Undivided Interest.**

Plaintiff's title to an undivided interest is sufficient in trespass to try title as against a trespasser.

ERROR from Harris.   Tried below before Hon. JOHN G. TOD.

*Allen, Watkins & Jones,* for plaintiff in error.

*Ford, Stone & Ford* and *Hendricks & Hendricks,* for defendant in error.

WILLIAMS, ASSOCIATE JUSTICE.—Defendant in error brought this action of trespass to try title to recover the land in controversy, known as Spillman's Island, in San Jacinto Bay, alleging title generally as well as by limitation under the three and five years' statutes.

The defendant pleaded not guilty, and specially, that he had title to 160 acres of the land sued for by ten years' limitation.

The trial was before the judge without a jury and judgment was rendered for plaintiff.

The original grant from the sovereignty, the validity of which is not questioned, was extended to Henry K. Lewis on the 8th day of November, 1830.   From Lewis the plaintiff deraigned title as follows:

1.   Record from the County Court of Austin County showing the appointment of John W. Moore as curator of the estate of Henry K. Lewis, deceased, by a court not mentioned in the statement of facts; his qualification; the filing of inventory and appraisement; petition for order of sale of real and personal property and report of sale of same.   This is certified by the county clerk to be the whole of such record existing in his office.   The dates of none of these proceedings are shown by the statement of facts, and it is not claimed that the sale referred to was of the land in controversy.

2.   Copy of an authentic act of sale, of date February 25, 1835, by John W. Moore, as curator of Henry K. Lewis, to James Spillman, conveying the land in controversy, reciting that it is made in compliance with a bond executed by Lewis in his lifetime, and in consideration of the payment to the curator of $160, receipt of which is acknowledged. This instrument also recites sale of other land of the estate, under orders of court, to Spillman, and conveys such other land.   It was made before George Ewing, acting judge of first instance and ex officio notary public in the town and jurisdiction of San Felipe de Austin, with the instrumental and assisting witnesses.   It was acknowledged by Moore January 25, 1839, and recorded same day in Harris County.

3.   Proceedings in the administration of James Spillman through which the land was sold and conveyed by the administrator to Archibald Wynne on the 3d day of February, 1841.   This deed was recorded July 28, 1852.

4.   Deed from Archibald Wynne to Frances Levenhagen, wife of Henry C. Levenhagen, of date June 9, 1842, recorded June 10, 1842.

5.   Deed from Henry Levenhagen and Frances Levenhagen to Robert Levenhagen, dated November 5, 1842, recorded November 9, 1842.

6.   Deed from Robert Levenhagen to Catherine Bowman, wife of

Charles Bowman, for undivided one-third of land in controversy, dated August 29, 1843, recorded September 5, 1843, which deed recites the consideration to be "$400 in hand paid by Catherine Bowman, wife of Charles Bowman," and that the deed is made "with the previous consent of said Charles Bowman," her husband.

7.   The following deed:

"*State of Texas, County of Harris.*—Know all men by these presents, that I, Catherine Bowman, acting with the consent and authority of my husband, Charles Bowman, of the State and county aforesaid, for and in consideration of four hundred dollars to me paid by Charles I. Glaevecke, also of the county aforesaid, have this day granted, bargained, sold, and released, and by these presents do grant, bargain, sell, and release unto the said Charles I. Glaevecke, all that part or parcel of land, lying and being situate on the waters of the San Jacinto, in the State of Texas, the county of Harris, conveyed to me by Robert Levenhagen, since deceased, by deed bearing date the 29th day of August, A. D. 1843, and entered upon Harris County record of deeds, Book J, pages 8 and 9, to wit: one undivided third of Spillman's Island, together with one undivided third of all the buildings and other improvements, rights, members, hereditaments, and appurtenances to the same belonging, or in anywise incident or appertaining.   To have and to hold all and singular the said undivided third of the above mentioned premises unto the said Charles I. Glaevecke, his heirs and assigns forever.   And I, the said Catherine Bowman, acting as aforesaid with the consent and authority of my said husband, Charles Bowman, bind myself, my heirs, executors, and administrators, to warrant the premises hereby conveyed and forever defend the same all and singular unto the said Charles I. Glaevecke, his heirs and assigns, against the claim or claims of every person whomsoever lawfully claiming and to claim the same or any part thereof.

"In testimony whereof I sign these presents with my hand and affix my scroll for seal therein this 23d day of March, A. D. 1847, together with my said husband's hand and scroll.

"CATHERINE BOWMAN.   [Seal.]<br>"CHARLES BOWMAN.   [Seal.]

"Signed, sealed, and delivered in presence of Henry Levenhagen.

"*The State of Texas, County of Harris.*—Before me, Henry Levenhagen, the undersigned notary public in aforesaid State and county, duly commissioned and qualified, personally appeared Catherine Bowman, the wife of Charles Bowman, a citizen of the State and county aforesaid, who declares and says that she signed, sealed, and delivered the foregoing instrument of writing as her voluntary act and deed, for the uses and purposes therein stated and set forth; and the said Charles Bowman having been examined, declares and says, that the said Catherine Bowman executed the same with his consent and authority, and he subscribed his name thereto.

"In testimony whereof, I sign these presents with my hand and affix my notarial seal thereto. Done at my office in the city of Houston, the State and county aforesaid, this 26th day of March, A. D. 1847.

"Notarial Record No. 152.

"HENRY LEVENHAGEN,<br>
"Notary Public H. C."

This deed was recorded March 10, 1849.

8. Proceedings in the County Court of Harris County in the estate of Robert Levenhagen, deceased, showing the regular appointment of Henry Levenhagen as administrator of such estate. Also that on the 1st day of October, 1847, the following petition was filed in the proceedings:

*"State of Texas, Harris County.*—To the Hon. Wm. F. Weeks, Judge of the Probate Court of said county, the petition of Charles J. Glavecke, a resident citizen of said county, respectfully represents that Robert Levenhagen, deceased, whose estate is administered by Henry Levenhagen, administrator in the Honbl. Court, died possessed of the legal title and estate in and to the undivided two-thirds of a certain parcel of land lying in said county known as Spillman's Island, but that the said undivided two-thirds of said land was the equitable property of this petitioner and held by the said Robert not as his own, but in trust to the use of his petitioner; And the said Robert always held himself bound to convey the 2-3 of said parcel of land according to the order and request of said petitioner; but that the said Robert died without made any conveyance and that his representative, the said Henry, Admr. &c. ought now to make such conveyance, but declines to do so without the permission of this Honbl. Court. Wherefore he prays that the said Administrator be ordered and allowed after due notice of this petition to convey the said undivided 2-3 of said parcel of land to this petitioner. And as in duty bound will ever pray &c.

"A. P. THOMPSON, Atty. for Petn."

On the same day the administrator made to such petition the following answer:

*"State of Texas, Harris County.*—In the Honbl. the Probate Court in and for said County at the September Term, thereof, Anno Domini, 1847:

"Estate of Robert Levenhagen, H. Levenhagen, Admr.—In this cause the Administrator Henry Levenhagen and for answer to the petition of Charles J. Glaevecke exhibited relative to the conveyance of 2-3 of Spillman's Island says that he is well aware that the said property was held by said Robert, deceased, in trust to the use of the said Charles J. Glaevecke as this Admr. and his Frances made to said Robert conveyance of said land in said trust; and is also aware and admits that said Robert al-

ways held himself bound to convey said land according to the request of said Charles and did not claim any beneficial interest therein but this administrator believes that he can not make the conveyance prayed for in said petition without the authority and permission of this Honbl. Court.

"This Administrator believes that if said permission be granted it will save to said Frances the cost of a suit in a Court of Equity to enforce the same.

"HENRY LEVENHAGEN, Admr. of Robert Levenhagen, Dec'd."

Upon which the following order was made by the probate court:

"Application of Charles J. Glaevecke, to compel Admr. to make deed. Upon the application of Charles J. Glaevecke for an order to the administrator to make a certain deed of conveyance. In this case the petition and answer having been considered, and it appearing to the court from the statements and admissions in said petition and answer duly sworn to and from the testimony in open court of A. P. Thompson, Joseph A. Harris, and Charles Bowman that the said Robert Levenhagen, deceased, neither owned nor claimed any beneficial interest in the undivided 2-3 of Spillman's Island, but held the legal title in trust for the same to the use of Charles F. Glaevecke. It is ordered and considered by the court that Henry Levenhagen in his capacity of administrator of the estate, may execute, take, and deliver to the said Charles J. Glaevecke the said 2-3 undivided interest in Spillman's Island. It is further ordered that the right of the heirs or creditors of said Robert Levenhagen be not prejudiced by this decree, and that said Charles J. Glaevecke accept said deed with full notice of the proviso, and that the petitioner pay all costs in this behalf expended.

"And thereupon came Henry Levenhagen, heir to the property of this estate, and as said heir assented to the foregoing decree."

9. Deed from Henry Levenhagen to Charles Glaevecke, of date September 6, 1848, recorded October 2, 1848, conveying undivided two-thirds of land, reciting the foregoing proceedings and purporting to be made by authority thereof, but also reciting a consideration of $1500 paid to such administrator, and "further stipulating that as one of the heirs of said Robert he assents to said decree, and that he is fully authorized by the other heirs of said Robert to express their assent to the same, which assent he hereby for said other heirs expresses—hereby releasing and confirming to said Charles I. Glaevecke all his own rights and the rights of his coheirs as heirs of said Robert to said parcel of land."

10. Deed from Charles Glaevecke to Joseph A. Harris for land in controversy, dated October 1, 1848, recorded March 10, 1849.

11. Deed from Joseph A. Harris to J. W. Jockusch for land in controversy, dated March 10, 1849, recorded October 10, 1849.

12. Deed from J. W. Jockusch to Thomas J. Jennings, dated July 9, 1853, recorded July 20, 1853.

13. Proof that Thomas J. Jennings was dead, leaving as his only heirs plaintiff and Hyde Jennings.

14. Deed from Hyde Jennings to plaintiff conveying his interest in land in controversy, dated April 20, 1893, recorded May 1, 1893.

Plaintiff proved that in 1872 Thomas J. Jennings took possession of the land through a tenant who lived there for at least four or five years thereafter, holding under Jennings, and that there was afterwards another person on the island also holding under Jennings. The evidence does not affirmatively show that this possession was continuous for five years. From 1872 on, Jennings had an agent in Houston who looked after the land when necessary. Since 1853 plaintiff and his ancestor have claimed and paid taxes on it. There is no evidence of any adverse claim prior to defendant's entry.

Defendant went upon the island in 1888 for Mr. Allen, to look after cattle which the latter had there. He has a cow lot and gardens of about four acres each, inclosed. Has never paid any taxes, and shows no other evidence of title.

Some of the objections urged by defendant to some of the instruments of title offered by plaintiff went to the sufficiency of their authentication to prove their execution. There were no separate bills of exceptions taken, but the objections and exceptions to the rulings were stated in the statement of facts, which was filed during the term at which the trial took place. When it was presented to the judge does not appear from his certificate. But at the next term of the court after that at which the trial was had, defendant in error filed a motion to strike the bills of exceptions from the statement of facts, on the ground that they were not presented to the judge within ten days after the conclusion of the trial, and were inadvertently allowed by the judge to remain in the statement in approving it. And these facts were found by the court below to be true and the bills of exception were ordered to be stricken out. We think under the decisions it was within the power of the court to thus correct the record. Railway v. Culberson, 72 Texas, 384; Willis & Bro. v. Smith, 90 Texas, 635; Boggess v. Harris, 90 Texas, 476.

We do not think the power of the court to correct its record is confined to cases in which it has been imposed on by undue practice, of which there is no suggestion in this case. By oversight the judge, in approving a statement of facts which included bills of exceptions, made it appear that they were properly presented when such was not the fact. The other party had the right to have this corrected. We shall therefore disregard the bills of exception, and consider only such objections now urged to the muniments of title as go, not to their authentication, but to their sufficiency as links in plaintiff's title. Most of the objections, however, are of the latter character.

The first in order are those urged to the conveyance from Moore as curator of Lewis' estate to Spillman. They are that the curator, without authority from court, had no power to convey land of the estate; and that

the court invested with merely probate jurisdiction had no power to decree specific performance.

Whether these propositions are true or not, the view we take of other questions renders it unnecessary that we should decide. If necessary, however, it might be a serious question whether or not, in support of so old a transaction under which a claim of right had been so long, so constantly, and so openly asserted, and against which no adverse claim by those succeeding to Lewis' rights has ever made its appearance, the court would not be called upon to presume authority from the proper court to the curator to make the conveyance. If the primary judge, in the exercise of his probate jurisdiction, had not power to decree specific performance (which we need not decide), he had such power as included in his general jurisdiction. Houston v. Killough, 80 Texas, 296; Baker v. Coe, 20 Texas; Bohanan v. Haus, 26 Texas.

The conveyance was made before such judge, and does not recite that it is made under an order of any sort; and if the facts are such as to require the presumption of authority conferred, it would be of authority from a competent tribunal. But, as we have said, a decision to that effect is unnecessary. The act of sale recites a bond from Lewis, which means evidently one to Spillman, and acknowledges receipt of the purchase money. The curator unquestionably had authority to collect and receipt for the money due from Spillman to the estate. Now, if the act of sale be treated only as a receipt for the money, reciting the bond, its possession by plaintiff, coupled with the other facts above referred to, are undoubtedly sufficient to give rise to the presumption or inference that the bond did exist. This, with the payment of the purchase money, would invest Spillman with the beneficial title, unless the contract to convey was illegal. The record does not show that the grant to Lewis was such as colonists under the laws of Coahuila and Texas were prohibited from conveying. It may have been acquired by purchase, or for military service, or as a Mexican citizen. We can not presume that the bond from Lewis to Spillman was illegal. But if the grant was of the kind of which the sale was prohibited we do not see that a different decision would result.

While contracts to convey such lands have always been held void, it has also been held that equities may be shown to have arisen under them without satisfying which the obligor or his heirs can not dispossess the obligee or those who have succeeded to his rights. Houston v. Killough, 80 Texas, 308, and authorities cited.

Such an equity is shown here, and since it would entitle the plaintiff to hold the land, even against the heirs of Lewis, until such equity is satisfied, certainly it gives him as strong a right against a stranger. If he is entitled, as against such heirs, to take and hold possession, it would seem to follow that he is entitled to recover it from a trespasser.

The next question arises on the deed from Catherine Bowman to Glaevecke. It is attacked on the ground that it is not acknowledged by the

married women sufficiently to convey her separate property. We think this is true, and that the deed is insufficient if the property is to be treated as being of the wife's separate estate. We have some doubt upon this point, but have concluded that the recitals in the two deeds are not sufficient to overcome the presumption that the land belonged to the community estate. It was conveyed to the wife during marriage. The deed to her recites that the money was received from her, but not that it was her separate property, and, being in her possession during marriage, it was presumptively community funds. The deed also recites that it is made to her with her husband's previous consent. This is consistent with either assumption. It states no fact necessarily implying that the property is conveyed to the wife in her separate right, or that it is intended as a gift from her husband. Higgins v. Johnson, 20 Texas, 393.

Considering the land as community property, we think the conveyance is plainly sufficient either as the deed of the wife, acting under a power from the husband of which the instrument itself affords sufficient evidence, or as a joint, though informal, conveyance by both.

The proceedings in the estate of Robert Levenhagen may be admitted to have been insufficient to empower the administrator to convey the property. It is true, the answer of the administrator might be upheld as an application by him for the order, but the trouble with it is that it does not state a case in which the probate court under section 2 of the Act of 1844 had power to decree such conveyances. Such action was authorized by that law when there were "outstanding bonds, obligations, or contracts in writing for the conveyance of land," etc. The fact stated in the proceeding was that the decedent had acquired and held the legal title in trust for Glaevecke, and not that there was an obligation in writing to convey. But plaintiff's title does not rest entirely upon the conveyance from the administrator. The deed from Henry Levenhagen recites him to be one of the heirs and to possess power from the others to convey their title. There is no evidence outside these papers showing who were the heirs of the decedent, and ordinarily a recitation of the fact in such a deed would not be evidence of heirship against anyone except parties thereto; but the lapse of time, coupled with acts of ownership on one side and the nonassertion of any opposing claim on the other, authorizes the court to presume and find as a fact not only the fact of heirship recited, but competent power in the grantor from the other heirs. Watkins v. Smith, 91 Texas, 589; Veramendi v. Hutchins, 48 Texas, 552; Watrous v. McGrew, 16 Texas, 513; Daily v. Starr, 26 Texas, 566.

For the purpose of this case, it matters not whether plaintiff exhibited title to the whole of the tract or not. If under the deed from Catherine Bowman or under that from Henry Levenhagen, Glaevecke obtained title to an undivided interest, plaintiff has the right to dispossess a trespasser showing no right. The views expressed make it unnecessary that

we decide whether or not plaintiff was entitled to recover upon the mere evidence of prior possession. Watkins v. Smith, supra, and authorities cited.

*Affirmed.*

Writ of error refused.