EX PARTE OTERO ET AL., PETITIONERS (STRIKER, PETITIONER AND APPELLANT, *v.* PEOPLE, INTERVENOR AND APPELLEE.)

## APPEAL from the District Court of Mayagüez in an Action for Designation of Heirs.

No. 1719.—Decided May 1, 1919.

FILIATION — ACKNOWLEDGMENT — NATURAL CHILDREN — REGISTRATION OF BAPTISM.—Registrations of baptism entered in the parochial records by the priests in accordance with the canonical law before the adoption of the civil register in Porto Rico, have the character of public documents and are *prima facie* evidence of the filiation of the baptized child as to the person

who is mentioned as natural mother in the registry. In accordance with this doctrine, in such cases the natural filiation becomes established although from the record of baptism the express acknowledgment by the mother should not appear, as required for the filiation as to the natural father.

The facts are stated in the opinion.

*Messrs. Benet & Souffront* for the appellant.

*Messrs. José Sabater* and *Abraham Peña* for Otero.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

María Ursula Striker and Julio Otero Rivera, as agent and attorney in fact for Ana and Carlota Arroyo y García and Enrique Arroyo y Arroyo, filed a petition in the District Court of Mayagüez praying for a decree of sole and universal heirship to the intestate estate of Dionisio Eleuterio Arroyo y Striker in favor of his natural sisters Ana and Carlota Arroyo y García and his natural nephews and nieces Nemesio Enrique and María Teresa Benita Arroyo y Arroyo, by right of representation of their father, Hilario Pablo Enrique Arroyo y García, a natural brother of Dionisio Eleuterio, and in favor of María Ursula Striker, natural half-sister on the maternal side of the said Dionisio Eleuterio Arroyo y Striker, in the proportions prescribed by law and without prejudice to third persons.

The court refused the decree for failure to show that Demetrio Eleuterio Arroyo y Striker was the acknowledged natural child of Isidoro Arroyo and of Ceferina Striker, and because of the consequent failure to establish the relationship of petitioners. Thereupon Ursula Striker moved for a reconsideration of this order and for a decree in favor of the said Ursula Striker, as sole and universal heir of Dionisio Eleuterio Striker, on the ground that the claim of this petitioner had been sufficiently established by reason of her relationship to the mother of Dionisio Eleuterio, whose filiation, as well as that of this petitioner, on the maternal side had been indisputably established.

The court overruled this motion on the ground that the baptismal certificate adduced by the petitioner did not show

her to be the natural sister of Dionisio Eleuterio, for the reason that the same contained no statement by the officiating priest that Ceferina Striker, in his presence, had personally recognized as her natural children either the said petitioner or the said Dionisio Eleuterio, nor that such acknowledgment had been made before witnesses or in any other manner before the priest who performed the ceremony of baptism and made the said entries.

From this order Ursula Arroyo y Striker appeals.

The baptismal entry in question reads as follows:

"In the year of Our Lord one thousand and eight hundred and fifty-four, this thirtieth day of January, I, the priest José Santiago Díaz y Peña, Parish Rector of the city of Asua, in the Dominican Republic, *Cum licentia parochi*, did solemnly baptize, anointing with oil and chrism in this Holy Parochial Church of Our Lady of Candlemas of the city of Mayagüez, a female child who was born on the twenty-first day of October of the year last past, giving her the name of María Ursula, a natural child of Seferina Striker of this neighborhood, maternal grandparents Enrique and Manuela Seguinó. Her godparents were Francisco Saturnino Mestre and Bárbara Cuevas, whom I advise regarding their spiritual relations and duties, to which I certify.—Miguel Arjona.—José Santiago Díaz de Peña."

The entries as to the baptism and acknowledgment of Dionisio Eleuterio Arroyo y Striker are set forth in the opinion of this court in *Otero et al.* v. *People*, 26 P. R. R. 75.

In 1854 the civil registry was kept by the parish priests, who were public officers. In the baptismal records they were required to set forth not merely the fact and the date of baptism but also, among other things, the names of the parents, the filial status of the child, the names of the grandparents according to circumstances, and the names of the godparents. These recitals were deemed to be true and correct until the contrary appeared. They were *prima facie* evidence not only of the spiritual relationship of the godparents to the child and to its parents, but likewise of the natural relationship

between the child and the person named as its mother. An exception to the rule was recognized in the case of the reputed natural father, who could not be prejudiced by such recitals unless he had appeared and in due form acknowledged the child. *Iturrino* v. *Iturrino*, 24 P. R. R. 439. The reason for the distinction lies in the fact that ordinarily in such cases the identity of the mother is not open to doubt, while the father is he *quem justae nuptiae demonstrant*. A formal acknowledgment by the putative father was demanded in lieu of the marriage certificate.

Details of this kind were not left to the idle caprice of the local priest to be mentioned haphazard or omitted at will, but by canonical law were required to be embodied in the official record. If the priest, by reason of his close spiritual and social relations with his parishioners, did not have personal knowledge of the facts, he obtained the necessary data, usually from the godparents or members of the family.

Paragraph 6 of article 595 of the Law of Civil Procedure of 1886 included among public and solemn documents certificates of birth, baptism, marriage or death, issued from the records by the parish priest or by the keepers of the civil registry, and a similar provision was contained in article 280 of the former law of 1856.

As such documents, these certificates were evidence of the facts recited therein in so far as they were not in open conflict with any principle of substantive law. When such conflict occurs, as, for instance, in the case of a recital with reference to the acknowledged paternity of a natural child unsupported by any formal acknowledgment by the putative father, the rule of evidence of course must yield. And a special procedure was prescribed by canonical law for the proper record of such acknowledgment as well as for the correction of errors committed in making the entries in regard to baptism. And even in the total absence of such records a method was provided for supplying the same *nunc pro tunc*. Volume I, Salazar y La Fuente, *Tratado de Pro-*

*cedimientos Eclesiásticos.* See also *García* v. *Garzot,* 18 P. R. R. 835; Escriche, *Diccionario de Legislación y Jurisprudencia,* pp. 358, 1235.

"As a general rule entries in a family record or Bible are admissible as evidence in matters of pedigree in order to prove relationship and the date and fact of birth, marriage, or death of a party." 10 R. C. L. p. 1136, sec. 343.

And it has been held that church records:

"* * * serve a purpose equivalent to that served by family records, and in this country they are fairly to be dealt with as equivalent to corporation records, which are generally evidence of such matters as are recorded in the usual course of affairs." Id. p. 1138, sec. 344.

"Entries in public or other official books or records, made in the performance of his duty by a public officer of Porto Rico, or by another person in the performance of a duty specially enjoined by law, are *prima facie* evidence of the facts stated therein." Law of Evidence, sec. 71.

Even in the case of private writings, and without regard to the age of the document:

"The entries and other writings of a decedent, made at or near the time of the transaction, when he was in a position to know the facts stated therein, may be read as *prima facie* evidence of such facts, in the following cases:

"1. * * *.

"2. When it was made in a professional capacity, and in the ordinary course of professional conduct.

"3. When it was made in the performance of a duty specially enjoined by law, contract, or employment." Id. sec. 93.

And we may add, for what the analogy is worth, that recitals in ancient deeds are admissible to prove heirship when corroborated by possession thereunder, or other circumstances. Note to *Dyer* v. *Marriott,* 45 L. R. A. (N. S.) 93–4, and cases cited.

See also *Mist* v. *Kapiolani Estate,* 13 Hawaii, 523; *Boagni* v. *Pacific Imp. Co.,* 111 La. 1063; *Maxson* v. *Jennings,*

48 S. W. 781; *Webb* v. *Ritter,* 54 S. W. 484; Wigmore on Evidence, Vol. II, sec. 1573, p. 1926 and note.

Here the entry is more than sixty years old. It was made as an official record by a public officer in the performance of his duty specially enjoined by law. It was also made in a professional capacity and in the ordinary course of professional conduct. There is no suggestion of fraud. Three years before the date of the entry Isidoro Arroyo had acknowledged a natural child, Dionisio Eleuterio, born of the same mother. The natural grandparents mentioned in the certificate of baptism considered in disposing of the appeal by other petitioners in this same case (*Otero et al. supra*) and the natural grandparents named in the certificate now before us, are identical. The right of María Ursula Striker to bear her mother's name seems never to have been challenged save by the court below and by the Government after reference by the trial judge to the *fiscal* apparently on the theory of an escheat for the want of known heirs. The nearest relatives who would be most interested in defeating the claim of María Ursula, if the recitals of the birth certificate were false, tacitly acknowledge the relationship by joining in the petition and by failure to protest either in this court or in the court below, even after the demand that appellant herein be declared sole and universal heir to the exclusion of her original copetitioners. In addition to all this, two witnesses testified that Dionisio Eleuterio Arroyo y Striker was the son of Isidoro Arroyo y Budia and of Ceferina Striker and that Ursula was the daughter of Ceferina Striker.

The order appealed from must be reversed and the case remanded.

*Reversed and remanded.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.