Ex Parte, Otero et al., Peticionario Apelado, y Striker, Peticionaria-Apelante, *v.* El Pueblo, Interventor-Apelado.

Apelación procedente de la Corte de Distrito de Mayagüez, en autos sobre declaratoria de herederos.

No. 1719.—Resuelto en mayo 1, 1919.

Reconocimiento de Hijos Naturales—Partidas de Bautismo—Prueba de la Filiación en Cuanto a la Madre Natural.—Las partidas de bautismo extendidas con arreglo al derecho canónigo en los libros parroquiales por los sacerdotes antes de la implantación del registro civil en Puerto Rico, tienen el carácter de documentos públicos y constituyen prueba *prima facie* en cuanto al parentezco entre el bautizado y la persona que como madre natural se asigna a éste en la inscripción. De acuerdo con esta doctrina en tales casos la filiación natural queda establecida aunque de la partida bautismal

no resulte el reconocimiento expreso hecho por la madre tal como se exije cuando se trata de establecer la relación filiar en cuanto al padre natural.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Benet & Souffront.*

Abogados de Julio Otero: *Sres. José Sabater* y *Abraham Peña.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

María Ursula Striker, y Julio Otero Rivera, como apoderado de Ana y Carlota Arroyo y García y de Enrique Arroyo y Arroyo, presentaron una petición en la Corte de Distrito de Mayagüez solicitando se declarase únicos y universales herederos abintestato de Dionisio Eleuterio Arroyo y Striker a sus hermanas naturales Ana y Carlota Arroyo y García y a sus sobrinos, naturales Nemesio Enrique y María Teresa Benita y Arroyo, por derecho de representación de su padre Hilario Pablo Enrique Arroyo y García, hermano natural que fué de Dionisio Eleuterio; y a María Ursula Striker, hermana natural de la madre del citado Dionisio Eleuterio Arroyo y Striker, en las proporciones que determina la ley y sin perjuicio de tercero.

La corte desestimó la petición por no haberse probado que Demetrio Eleuterio Arroyo y Striker fuera hijo natural reconocido de Isidoro Arroyo y de Ceferina Striker, y por no haberse establecido en consecuencia el parentesco de los peticionarios. Entonces Ursula Striker presentó una moción para que se reconsiderase esta orden de la corte y pidiendo se declarase a dicha Ursula Striker como única y universal heredera de Dionisio Eleuterio Striker, por el fundamento de que las pretensiones de esta peticionaria habían quedado suficientemente establecidas por razón de su parentesco con la madre de Dionisio Eleuterio, cuya filiación, así como la de esta peticionaria, por parte materna, había quedado indisputablemente establecida.

La corte desestimó esta moción por el fundamento de que las partidas de bautismo presentadas por la peticiona-

ria no prueban que la misma sea hermana natural de Dionisio Eleuterio, porque en las mismas no se afirma por el sacerdote autorizante que a su presencia hayan sido reconocidos personalmente por Ceferina Striker como hijos naturales suyos, ni la peticionaria ni dicho Dionisio Eleuterio, ni se afirma que tal reconocimiento se haya hecho ante testigos ni en ninguna otra forma ante los sacerdotes que les administraron el bautismo y extendieron dichas partidas.

Contra esta orden interpuso Ursula Arroyo y Striker el presente recurso de apelación.

La partida de bautismo en cuestión dice como sigue:

"En el año del Señor de mil novecientos cincuenta y cuatro, día treinta de enero: Yo el presbítero don José Santiago Díaz y Peña, Cura Rector de la Villa de Asua en Santo Domingo Cum licentia parochi bauticé solemnemente, ungí con el sagrado óleo y Crisma en esta Santa Iglesia Parroquial de Nuestra Señora de Candelaria de la Villa de Mayagüez a una niña que nació el veinte y uno de octubre del año próximo pasado y dí por nombre María Ursula hija natural de Dña. Ceferina Striker de este vecindario, abuelos maternos D. Enrique y Dña. Manuela Seguinó: fueron sus padrinos D. Francisco Saturnino Mestre y Dña. Bárbara Cuevas, a quienes advertí el parentesco espiritual y obligs: doy fe. Miguel Arjona.—José Santiago Díaz de Peña."

Las partidas relativas al bautismo y reconocimiento de Dionisio Eleuterio Arroyo y Striker aparecen en la opinión de esta corte en el caso de *Otero y Striker* v. *El Pueblo*, 26 D. P. R. 83.

En el 1854 el registro civil estaba a cargo de los curas párrocos, quienes tenían el carácter de funcionarios públicos. En las partidas bautismales debían hacer constar no sólo el hecho y la fecha del bautismo, sino también, entre otras cosas, los nombres de los padres, la clase de filiación del niño, los nombres de los abuelos según los casos, y los nombres de los padrinos. Estas constancias se consideraban ser fieles y correctas mientras no se demostrase lo contrario. Constituían prueba *prima facie,* no sólo en cuanto al parentesco

espiritual de los padrinos con relación al niño y a los padres de éste, sino que también en cuanto al parentesco natural entre el niño y la persona que como madre se le asignaba. Se reconocía como excepción a esta regla el caso de quien aparecía como padre natural, a quien no podían perjudicar tales constancias a menos que hubiese comparecido y en debida forma reconocido el niño. *Iturrino v. Iturrino,* 24 D. P. R. 467. La razón de esa diferencia se funda en el hecho de que por lo general en tales casos la identidad de la madre no puede ponerse en duda, mientras que el padre es aquel *quem justae nuptiae demonstrant.* Se requería a falta de justas nupcias, el reconocimiento formal del padre putativo.

Esta clase de particulares no se dejaban al mero capricho del párroco para que pudiera mencionarlos al acaso u omitirlos voluntariamente, sino que las prescripciones del Derecho Canónico le exigían que llenase esos requisitos al extender el acta oficial. Si el párroco, por razón de sus íntimas relaciones espirituales y sociales con sus feligreses no tenía conocimiento personal de los hechos, él obtenía los datos necesarios, por lo general cerca de los padrinos o familiares del bautizado.

El párrafo 6 del artículo 595 de la Ley de Enjuiciamiento Civil de 1886 comprendía entre los documentos públicos y solemnes las partidas de bautismo o nacimiento, de matrimonio o de defunción, dadas con arreglo a los libros por los párrocos o por los encargados del registro civil; y la Ley de Enjuiciamiento Civil anterior que regía desde el 1856 contenía igual precepto en su artículo 280.

Como tales documentos públicos, estas partidas hacían prueba de los hechos relacionados en las mismas en todo aquello que no estuviera en abierta oposición con algún precepto de la ley sustantiva. Cuando semejante conflicto ocurriese, como por ejemplo, en el caso de que se hubiese consignado el reconocimiento de la paternidad de un hijo natural cuando éste no había sido formalmente reconocido por

su padre putativo, entonces la regla de evidencia, por su-
puesto, no rige.  Y el Derecho Canónico prescribía un procedi-
miento especial para el debido asentamiento de tales recono-
cimientos así como para subsanar los errores cometidos en
la redacción de las partidas bautismales, y aun faltando por
completo tales asentamientos o partidas habíase señalado un
método para suplirlas *nunc pro tunc.*  Véase el Tratado de
Procedimientos Eclesiásticos, por Salazar y Lafuente, tomo
I, y el caso de *García et al.,* v. *Garzot,* 18 D. P. R. 866, 878.
Escriche, Diccionario de Legislación y Jurisprudencia, (nue-
va edición), páginas 358 y 1235.

"Como regla general los asientos hechos en el registro o en la
biblia de una familia son admisibles como prueba en cuestiones re-
ferentes a genealogías con el fin de probar el parentesco y la fecha
y el hecho del nacimiento, matrimonio o fallecimiento de una per-
sona."   10 R. C. L. p. 1136, sec. 343.

Y se ha afirmado que el registro de una iglesia—

"*   *   * sirve para propósitos equivalentes a los que sirven
los registros de familia, y en este país pueden muy bien considerarse
como equivalentes a los libros registros de una corporación, que por
lo general hacen prueba de aquellas materias que se registran en
el curso ordinario de sus negocios."  Id., p. 1138, sec. 344.

"Los asientos en libros o registros públicos u oficiales, practica-
dos en el desempeño de su cargo por un funcionario público de
Puerto Rico, u otra persona en el cumplimiento de una obligación
especialmente encomendádale por la ley, constituyen evidencia *prima
facie* de los hechos consignados por estos asientos."   Art. 71 de la Ley
de Evidencia.

Aun en el caso de documentos privados, y sin tomar en
cuenta la antigüedad del documento:

"Los asientos y otros escritos de un finado, hechos en los momentos
o poco antes de efectuarse la transacción, cuando se hallaba en ap-
titud de conocer los hechos consignados en ellos, podrán leerse como
evidencia *prima facie* de los referidos hechos, en los casos siguientes:
"1. *   *   *.
"2. Cuando se hubiere hecho con carácter profesional y en el
ejercicio ordinario de una profesión.

"3. Cuando se hubiere hecho en cumplimiento de un deber impuesto por una ley, un contrato o un cargo.    Art. 93 de la Ley de Evidencia."

Y añadiremos, por el valor que tenga, como analogía, que las constancias que aparecen en escrituras antiguas son admisibles para probar la condición de heredero cuando están corroboradas por la posesión en virtud de dichos títulos, o por otras circunstancias.    Nota en *Dyer* v. *Marriott*, 45 L. R. A. (N. S.) 93–4, y casos citados.    Véase también *Mist* v. *Kapiolani Estate*, 13 Hawaii 523; *Boagni* v. *Pacific Imp. Co.*, 111. La. 1063; *Maxson* v. *Jennings*, 48 S. W. 781; *Webb* v. *Ritter*, 54 S. W. 484; Wigmore on Evidence, volumen II, sección 1573, página 1926 y notas.

En este caso el asiento es de más de sesenta años.    Fué extendido con el carácter de asiento oficial por un funcionario público en cumplimiento de su deber impuéstole de una manera especial por la ley.    Se hizo con carácter profesional y en el curso ordinario de una obligación profesional. No se ha hecho insinuación alguna de que haya habido fraude.    Tres años antes de la fecha del asiento, Isidoro Arroyo había reconocido un hijo natural, Dionisio Eleuterio, que nació de la misma madre.    Los abuelos naturales mencionados en la partida de bautismo considerada al resolver la apelación interpuesta por otros peticionarios en este mismo caso (*Otero y Striker* v. *El Pueblo, supra*) y los abuelos naturales nombrados en la partida que estamos ahora considerando, son idénticos.    El derecho de María Ursula Striker para llevar el apellido de su madre parece no haberse jamás impugnado por nadie, salvo por la corte inferior y por el gobierno después de haber el juez sentenciador referido este caso al fiscal al parecer bajo la teoría de retroversión al Estado (*escheat*) por falta de conocidos herederos.    Los parientes más cercanos que deberían estar más interesados en derrotar las pretensiones de María Ursula, dada que fueran falsas las constancias que aparecen de la partida de nacimiento, tácitamente reconocen el parentesco por haberse unido en la peti-

ción y al no protestar ni en esta corte ni en la corte infe-
rior, aun después de haber pedido la apelante en este caso
se le declarase única y universal heredera con exclusión de
sus copeticionarios primitivos. Además de todo esto, dos
testigos declararon que Dionisio Eleuterio Arroyo y Striker
era hijo de Isidoro Arroyo y Budia y de Ceferina Striker y
que Ursula era hija de Ceferina Striker.

Es de revocarse la orden recurrida y devolverse el caso.

> *Revocada la orden recurrida y devuelto el
> caso.*

Jueces concurrentes: Sres Presidente Hernández y Aso-
ciados Wolf, del Toro y Aldrey.