PEVETO et al. v. RICHARDSON et al.
No. 1992.

Court of Civil Appeals of Texas. Beaumont.
May 1, 1931.

Rehearing Denied May 6, 1931.

Wm. E. Loose, of Houston, and E. L. Reid and V. H. Stark, both of Orange, for appellants.

O. S. Parker, and O. M. Lord, both of Beaumont, Stephenson & Dies, of Orange, and A. M. Huffman, of Beaumont, for appellees.

WALKER, J.

The parties to this suit are too numerous to name individually, but will be described by groups holding and claiming common interests. The suit was in trespass to try title by J. F. Richardson et al. against Bob Hale and W. A. Peveto et al. and Francis D. Hollis et al., and was for the title and possession of the three following described tracts of land in Orange county: (a) All of the Jacob Beaumont survey; (b) 100 acres out of the extreme southwest corner of the John Stevenson league lying contiguous to the northeast corner of the Beaumont survey, with a common line of 700 or 800 varas; (c) 165 acres out of the John Stevenson league lying immediately north of the east end of the 100 acres just described, and with its east line an extension of the east line of the 100 acres. The southwest corner of the John Stevenson league corners on the northeast boundary line of the Jacob Beaumont survey and the west boundary line of the league is the west boundary line of the 100 acres. Between the west boundary line of the league and the west boundary line of the 165 acres lying immediately north of the west end of the 100 acres, and consuming all the acreage between the west boundary line of the 165 acres and the west boundary line of the league, is another tract of land described in the record as the Dan Patillo tract. This tract of land is important only on the issue of appellants' title of ten-year limitation.

The defendants answered by demurrers, general denials, and pleas of not guilty and of the several statutes of limitations. The defendants Francis D. Hollis et al. also answered by way of cross-action, claiming an

interest of 50 acres in the Jacob Beaumont survey. They also filed a cross-action against defendants Bob Hale and W. A. Peveto, claiming 100 acres in the John Stevenson survey. Fannie A. Sneed et al. intervened in the suit, claiming the 100-acre tract. All parties adversely interested to the plea of intervention answered the same by pleas of not guilty and by specially pleading the several statutes of limitation, and affirmatively claimed the land by way of cross-action. The trial was to the court without a jury, with judgment as follows, statement taken from appellants' brief:

"Thereafter on the 23rd day of November, A. D. 1929, the court rendered judgment in said cause in favor of the plaintiffs and against the defendants W. A. Peveto, et, al., and Bob Hale, and the defendants Francis D. Hollis, et al., for all of the lands and premises described in plaintiffs' petition except the 165 acre tract, which was awarded to these defendants, and in favor of the intervenors Fannie A. Sneed, et al., against all other parties to the suit, the title and possession of all the lands described in said petition in Intervention and being One Hundred (100) acres, more or less, in the Jno. Stephenson Survey.

"The court further decreed, in accordance with an agreement between intervenors Fannie A. Sneed et al. and the plaintiffs, that the plaintiffs recover an undivided 85/127ths interest, in the lands described in the petition in Intervention of Fannie A. Sneed et al.

"The court further rendered judgment that the defendants Francis D. Hollis et al., recover the title to an undivided interest of fifty (50) acres out of the Jacob Beaumont Survey as against the defendants W. A. Peveto et al. and Bob Hale, subject, however, to the terms of an oil and mineral lease theretofore executed by the defendants Francis D. Hollis et al. with the exception of O. M. Lord, to the defendant Bob Hale."

Only the defendants Bob Hale and W. A. Peveto et al. have appealed to this court from the judgment of the lower court.

The record title to the several tracts of land in controversy was as follows: The Jacob Beaumont survey was patented on the 7th day of November, 1890, to W. P. Williamson as assignee of Jacob Beaumont under a survey made by Surveyor J. A. Pinkston on the 13th day of June, 1890, and certified by him as containing 467½ acres of land. The land was located by virtue of confederate script No. 586 issued to Jacob Beaumont on August 23, 1881, and transferred by him to George Williamson July 27, 1882, and surveyed for George Williamson on the 24th day of June, 1883, by Frank Cleveland, county surveyor of Orange county, and duly certified by this surveyor on the 10th day of September, 1883, as containing 661 acres of

land. On the 10th day of December, 1885, George Williamson conveyed the survey to W. P. Williamson as containing 640 acres. On that same day W. P. Williamson conveyed to J. W. Faulk an undivided interest of 50 acres in the Jacob Beaumont. It is our understanding from the record that the Faulk title to the 50 acres was owned by defendants Francis D. Hollis et al., which 50 acres was awarded to them by the judgment of the court.

During his lifetime, George Stephenson acquired the record title to the 100 acres and the 165 acres above described, together with other land on the John Stephenson league, and, owning this land, contracted to convey to John Turner 441 acres thereof, for which he was duly paid by Turner, but died before making the conveyance. After his death, his executrix petitioned the probate court of Jefferson county, which court had jurisdiction of the estate of George Stephenson, deceased, for authority to execute a deed to John Turner for the 441 acres of land. To quote from the application: "Which the said Turner contracted for and justly paid for in the lifetime of the said deceased, and for which the said Turner has never obtained any title."

On February 27, 1849, under orders of the probate court in all respects regular, the executrix conveyed to John Turner the 100 acres and the 165 acres as above described, reciting in her deed as follows: "That I, Lydia Stephenson, of Jefferson County, in my capacity as Administratrix of the goods and Estate which were of Geo. W. Stephenson, late of Jefferson County, deceased intestate, for this purpose being duly authorized and empowered by a decree of the County Court of Jefferson County, in consideration of One Hundred Dollars ($100.00) paid by John Turner to Geo. W. Stephenson, dec'd., in his lifetime, the receipt whereof I do hereby acknowledge, I do grant, etc., (here follows the granting clause and description of land conveyed)."

On January 14, 1881, John Turner conveyed the 100 acres to R. F. Jett, and on the 15th day of January, 1881, Jett conveyed it to W. P. Williamson, and on the 10th day of December, 1885, Williamson conveyed the same land to Faulk. This is the 100 acres in which interveners were awarded an undivided interest. As to the title of the interveners under which they recovered, the judgment awarding them their undivided interest contains the following recitation: "Being all the land in Orange County, Texas, deeded to Willis B. Moore by John Turner by deed dated February 11, 1854, filed for record in Orange County, Texas, on the same day."

It is not necessary to trace the title of W. P. Williamson to the 165 acres, as it

seems to be conceded that he owned that tract on September 14, 1888. On that date, joined by his wife, W. P. Williamson conveyed to James Peveto an undivided interest of 611 acres in the Jacob Beaumont survey, the 165-acre tract, and a third tract described as follows: "Also fifty acres, more or less, of the Headright of John Stephenson, in Orange County, Texas, and known in the division of the Estate of said Stephenson as Division No. One, and to me deeded by R. F. Jett."

On the 4th day of June, 1893, James Peveto and wife executed a deed of trust to J. W. Faulk to the three tracts of land deeded to them by W. P. Williamson to secure him in an indebtedness of $1,050. On October 2, 1894, Faulk, as trustee, made a deed to this land to Almond Berwick, who, on the 1st day of June, 1899, reconveyed all of the land held by him under the trustee deed to James Peveto. Peveto recorded this deed in 1903. The judgment of the trial court held this deed to be void, and, while appellants have advanced propositions attacking this holding of the trial court, we understand from their brief that these propositions have been abandoned. However, this deed is important as affording the basis for appellants' plea of ten-year limitation. J. F. Richardson acquired the indebtedness held by W. P. Williamson against Peveto, and on the 25th day of August, 1896, was awarded judgment by the district court of Orange county foreclosing his mortgage lien as against Peveto and wife and Faulk and W. P. Williamson. All the land was sold under this foreclosure to appellee J. F. Richardson, and on the day of sale, to wit, the 3d day of November, 1896, the sheriff of Orange county executed to him a deed thereto. The description of the 50 acres on the Stephenson league and of the undivided interest of 611 acres on the Jacob Beaumont survey become material under appellants' propositions, which we will discuss later in this opinion.

## Opinion.

Appellants' first seven propositions assert error on the ground that the trial court erroneously overruled their motion for a continuance because of the absence of their witness Joe Eaves. It was the first application of the defendants W. A. Peveto et al., but at the previous term of the district court of Orange county their codefendant, Bob Hale, was granted a continuance. This suit was filed on the 12th day of December, 1928. On the agreement of the parties it was called for trial on the 4th day of November, 1929, when all parties except the defendants Bob Hale and W. A. Peveto et al., announced ready for trial. These defendants duly filed their motion for continuance because of the absence of Joe Eaves, whose testimony was shown to be material on their pleas of limi-

tation. On the hearing of this application, it was shown that the witness was about eighty years old; that he lived in Jefferson county at Port Arthur, only a short distance from Orange, where this case was to be tried; that he was in frail health, and for several years had been suffering from a groin trouble in the nature of a rupture; that defendants knew the witness and the importance of his testimony before the case was called for trial, and had secured from him a promise to attend court and testify in their behalf; that he did attend court, but, before the case was called for trial, was taken seriously sick, and on the advice of his attending physician returned to his home in Port Arthur; that this physician testified the witness might be able to return to court within four or five days. Appellants had no subpœna issued for the witness, and, prior to the time of presenting their motion for continuance, had made no effort to take his depositions. On the hearing appellees agreed to waive the issuance of a commission and to go with appellants to Port Arthur at any time to take the testimony of the witness. Upon this showing the motion for continuance was overruled, with the following statement by the trial judge: "The motion is overruled, gentlemen. It is the belief of this court that the testimony of this witness can be had before the case will close, either by his presence in court or by deposition."

Thereupon the trial proceeded in regular order until the 21st day of November, 1929, when all the parties except appellants concluded their testimony. Thereupon they renewed their motion for continuance because of the absence of the witness Joe Eaves. Though during the two weeks the case was on trial appellees were willing to waive the issuance of a commission to take this witness's depositions and to go with appellants to Port Arthur for that purpose, appellants made no effort to take his depositions. While material on the issues of limitation, there was nothing about the testimony of this witness to show that appellants could not have fully protected their interest by taking his depositions, especially in view of the fact that the trial was to the court without a jury. From the statement made in appellants' application for a continuance, this witness was expected to testify only to the nature of the claim and possession of James Peveto to the land in controversy, the character of fences maintained by him around this land, and the nature of the marsh on the south or the 100-acre tract, that is, whether or not it was sufficient to constitute a barrier to cattle leaving the 100 acres or coming from other lands onto the 100 acres. This was not a statutory motion for continuance, but one addressed to the sound discretion of the trial judge. Under the authorities of this state, this discretion was not abused by overruling the motion. If appel-

lants wanted the testimony of Joe Eaves, it was their duty to take his depositions, for manifestly they could have done this, which would have afforded them an adequate means of presenting his testimony to the trial court. Home Forum, etc., v. Varnado (Tex. Civ. App.) 55 S. W. 364; Thompson et al. v. Hart (Tex. Civ. App.) 157 S. W. 184; Hahl v. Davidson (Tex. Civ. App.) 202 S. W. 792; Palm v. Theumann (Tex. Civ. App.) 201 S. W. 421.

■■■ The evidence shows, as stated above, that W. P. Williamson bought the Jacob Beaumont survey from George Williamson as containing 640 acres, and that it was first conveyed as containing 661 acres. He sold an undivided interest of 50 acres to Faulk and an undivided interest of 611 acres to James Peveto. By their eighth proposition appellants claim that the lower court erred in excluding the testimony of their witness Forrest Daniels to the effect that this survey contained a large excess acreage. To make this excess, the witness would have placed the Beaumont survey in conflict with adjoining surveys whose owners were in no way parties to this suit; thereby raising issues the court was without jurisdiction to determine. For that reason, the evidence was properly excluded. But appellants had no title to any part of the Jacob Beaumont, and had never been in possession of any part of it. Appellants, being without possession or title, could offer this testimony only on the theory of an outstanding title. Appellees, if they did not own all of the survey, at least had in it an undivided interest of 661 acres. On this statement the evidence was properly excluded under the rule reannounced in Hennegan v. Nona Mills Co. (Tex. Civ. App.) 195 S. W. 664, 669, "that as against a naked trespasser, the owner of an undivided interest may recover the entire tract."

■■■ The ninth proposition is to the effect that the deed of the administratrix to John Turner was void because it was not shown that the contract whereby George Stephenson was to convey to John Turner the 441 acres of land was in writing, and because it was not shown that the administratrix was paid a valuable consideration for the deed. The proposition is without merit. After the lapse of eighty years, on a collateral attack, the law will presume that the probate court had before it all necessary facts to support the judgment, where the record does not affirmatively show to the contrary. Maxson v. Jennings, 19 Tex. Civ. App. 700, 48 S. W. 781, 784; Dutton et al. v. Wright et al., 38 Tex. Civ. App. 372, 85 S. W. 1025; Houston v. Killough, 80 Tex. 296, 16 S. W. 56; Baker v. Coe, 20 Tex. 429; Bohanan v. Hans, 26 Tex. 445.

By the tenth and eleventh propositions appellants attack the trial court's conclusions holding void Faulk's deed as trustee to Almond Berwick, but these propositions are abandoned, and require no further consideration.

By the twelfth proposition appellants contend that they defeated the appellees' record title to the land in controversy by the undisputed testimony in support of their plea of ten-year limitation. Their theory is that the three tracts of land deeded to Peveto by Berwick under his deed of the 12th of June, 1889, and which deed Peveto recorded on the 16th day of December, 1903, were contiguous, and that James Peveto was in actual possession of the 165 acres from the date he recorded his deed in 1903 to his death in 1920, claiming to the boundaries of his deed. They thus state their proposition of law: "That where surveys or tracts of land separately described are conveyed in the same deed and said tracts are contiguous to each other, adverse possession by the grantee of one of the tracts for the statutory period will extend to all the several tracts if all of said tracts are claimed to be owned by the same person."

Allen v. Boggess, 94 Tex. 83, 58 S. W. 833, and Houston Oil Co. v. Rice Institute (Tex. Civ. App.) 194 S. W. 413, support appellants' proposition as a mere abstract statement of the law, but that proposition does not control this case. It will be conceded that appellants' ancestor James Peveto held the 165 acres under all the legal essentials to mature thereto a title under the statute of ten-year limitation. (Rev. St. 1925, art. 5510.) But appellees made a sharp issue against appellants' contention that the three tracts of land described in the Berwick deed to Peveto were contiguous. This issue was found against appellants by the trial court by the following fact conclusions, which has abundant support in the record: "I find that subdivision No. 1 of the John Stephenson Estate is situated in the northern end of the John Stephenson Survey and is about one mile distant from the Willis Moore tract." Since to invoke the rule announced in Allen v. Bogess it is necessary that all the subdivisions claimed through the deed be contiguous, and since the three tracts of land claimed by appellants were not contiguous, the twelfth proposition must be overruled.

All of the Jacob Beaumont survey lies in the Neches river marsh. James Peveto never had a fence on any part of that survey, nor did he ever have a fence on the south line of the 100-acre tract claimed by appellees. It was the theory of appellants that James Peveto had a fence on the north and east boundary lines of the 165 acres and on the east boundary line of the 100 acres running south far enough into the marsh to afford a barrier to cattle leaving the land or entering it from other lands. It was also their theory that James Peveto's fence on the north of the 165 acres extended across the north boundary line of the Dan Patillo tract to the west

boundary line of that tract, and from that point that a fence extended south into the Neches river marsh on the Beaumont, affording a barrier, as did the fence on the east of the 165 acres and the 100 acres. And further, that an agreement existed between Dan Patillo and James Peveto that the cattle of each of them might graze over all the lands included within this fence.

By his seventeenth, eighteenth, nineteenth, twenty-first, twenty-second, and twenty-third conclusions of fact the trial court found against appellants' contention that the Neches river marsh was a sufficient barrier to prevent cattle from entering and leaving the lands in controversy. While these fact conclusions are attacked by their thirteenth and fourteenth propositions as not having support in the evidence, it is our conclusion that these propositions are without merit. The statement of facts consists of six medium size volumes, and much of the testimony is on this issue. It would serve no useful purpose to review it in detail in this opinion. It is sufficient to say that the statement brought forward by the parties in their briefs affords a basis for the conclusions of fact thus attacked.

No statement is made in support of the fifteenth proposition, and therefore we treat it as waived.

By the sixteenth proposition, the description of the 611 acres conveyed to Richardson by the sheriff is attacked as being void. This description was as follows: "Also six hundred eleven acres off of Jack Beaumont Headright suitable in Orange County, Texas, this land being South of John Stephenson and William Allen Surveys."

Appellees' counter proposition to this contention, which fully summarizes the facts on this issue, and which we adopt as a statement of the facts, is as follows: "Where the deed from W. P. Williamson to James Peveto described the land as 'Six Hundred Eleven acres of land off the Jacob Beaumont Headright, situated in the County of Orange, State of Texas, and transferred to me by George Williamson; the land lying South of the John Stephenson and William Allen Surveys', and where the mortgage from James Peveto and wife to J. F. Richardson described the land in substantially the same way, and where the judgment rendered in favor of J. F. Richardson foreclosing the mortgage lien described the land as 'Six Hundred Eleven acres off the Jack Beaumont Headright, situated in the County of Orange, State of Texas, this land being South of the John Stephenson and William Allen Surveys', but said judgment also referred to the deed of trust and its place of record for further description of said land, and where the sheriff's deed to J. F. Richardson described the land as 'Six Hundred Eleven acres off the Jack Beaumont Headright situated in the County of Orange, State of Texas, this land being south of the John Stephenson and William Allen Surveys', but said judgment also referred to the deed of trust and judgment, and where the undisputed evidence shows that the Jacob Beaumont Survey did lie South of the William Allen and John Stephenson Surveys, the trial court did not err in permitting the plaintiffs to introduce in evidence the deed from James Peveto and wife, by Sheriff, to J. F. Richardson, dated November 3, 1896, over the objection of appellants."

The facts thus summarized relieve the description in the sheriff's deed of the attack made against it. Mackechney v. Temple Lumber Co. (Tex. Civ. App.) 197 S. W. 744; Walter Connally & Co. v. Bank (Tex. Civ. App.) 189 S. W. 311, 312; Williams v. McComb (Tex. Civ. App.) 163 S. W. 654, 656; Anderson v. Casey-Swasey Co. (Tex. Civ. App.) 120 S. W. 918; Wren v. Scales, 55 Tex. Civ. App. 62, 119 S. W. 879; Pierson v. Sanger, 93 Tex. 160, 53 S. W. 1012; Sanger v. Roberts, 92 Tex. 312, 48 S. W. 1, 3. In support of their theory of actual inclosure of all the land in controversy, appellants asked their witness W. A. Peveto the following question: "What, if anything, did Daniel Patillo state to your father, in your presence, with reference to cattle grazing over on that land on Bear Island and South of the James Peveto place and Dan Patillo place?"

By the seventeenth and last proposition the contention is made that it was error to exclude this testimony. This proposition is without merit. The proffered testimony was material only on the theory of a lawful inclosure of the lands claimed by appellants. Since this issue was found against them by the trial court, the testimony of this witness in this respect was rendered immaterial.

From what has been said it follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.